THE STATE OF KANSAS V. B. F. BRIGGS.

No. 14,762.  (86 Pac. 447.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Obtaining Money by False Pretenses—Information.* An information which charged that the defendant obtained a draft for money as a commission for a loan on a farm by the false and fraudulent pretenses that he was an agent engaged in loaning money on farms, and that he had much property and was financially responsible, and had a large amount of money under his control, was not bad because it failed to state whether the application of the borrower for the loan was oral or written; and no error was committed in denying a motion to make the information more definite and certain in that respect.

2. ——— *Representation Amounting to a False Pretense.* A representation that a person is in a business or situation in which he is not, made for the purpose of defrauding another, and by which money or property is fraudulently obtained, is a false pretense.

3. ——— *Coupling Future Promise with a False Pretense.* The coupling of a future promise with a false pretense does not relieve the false pretense of its criminal character.

4. ——— *Evidence—Knowledge of Falsity and Guilty Intent.* Testimony that the defendant had made similar false representations and pretenses to others is admissible to show his knowledge of the falsity of the representations made in the present case and his guilty intent in making them.

Appeal from Crawford district court; ARTHUR FULLER, judge. Opinion filed July 6, 1906. Affirmed.

*C. C. Coleman,* attorney-general, and *John M. Wayde,* for The State.

*E. C. Clark,* for appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: B. F. Briggs was convicted of obtaining money from Henry Mattox by means of false and fraudulent pretenses. In the information it was charged, in substance, that Briggs represented that he was a loan agent, engaged in loaning money on real estate; that he was financially responsible and worth from $45,000 to $60,000; that he had under his control $500,000 to loan upon farms, and that he would make Mattox a loan of $3000 on his farm, at an interest rate of five per cent. and a commission of $120, one-half of which was to be paid at once and the balance when the loan was completed; and that, relying on these representations, Mattox contracted for the loan and sent Briggs a draft for $60, the value of which was realized by Briggs. It was alleged that the representations were false and fraudulent; that Briggs had no money to loan and was not engaged in making loans on farms; that he had neither money nor credit, but was wholly insolvent; and that he never intended to effect a loan, but made the false and fraudulent representations with the intent to cheat and defraud Mattox out of the draft and the $60 obtained upon it. By motions to make definite and certain and to quash appellant challenged the sufficiency of the information.

The motion to make an information definite and certain is an anomaly in criminal procedure. Ordinarily an indictment or information which fails to particularize or lacks in fulness of statement is open to attack by a motion to quash. Courts sometimes require specification of particular things in what is known as a bill of particulars, but the making of such an order

is largely within the discretion of the trial court. (Hughes, Crim. Law & Proc. § 2879; 1 Bishop's New Crim. Proc. § 643.) If the motion to make definite and certain were permissible, or should be treated as a motion for a bill of particulars, the court would not have been justified in allowing it. The supposed defect is that the information did not disclose whether the application of Mattox for a loan of money was in writing or only an oral one. The application was a mere incident in the transaction, and so far as the offense is concerned it is wholly immaterial whether it was written or oral. (*The State v. Baker,* 57 Kan. 541, 46 Pac. 947.) It was not the basis of the false pretenses, and the money was not obtained by means of the application. The important features of the offense charged were the false representations, made with intent to defraud, and the obtaining of money by reason of them, and these matters were fully stated in the information. It is the things said and done by Briggs, and not by Mattox, which are material and which formed the basis of the offense charged in the information.

Upon the motion to quash it is contended that the representations alleged are not material, and are mere promises to be performed in the future. It is true, as contended, that a mere promise to do something in the future, however false, is not an offense. "The false pretense relied upon to constitute an offense under the statute must relate to a past event, or to some present existing fact, and not to something to happen in the future." (*In re Snyder, Petitioner, &c.,* 17 Kan. 542, 556.) Although some of the representations were mere promises, others were of existing facts, and are material. It was alleged that Briggs represented himself to be a responsible agent, engaged in making loans on real estate and to the farmers of southeastern Kansas, whereas he was not so engaged, and was not making loans on real estate to farmers. A misrepresentation as to the business in which a person is engaged, made for the purpose of defrauding another, and by

which money or property is obtained, is a false pretense. It is a false pretense where a man falsely represents himself to be in a situation or business in which he is not. (*Higler v. People,* 44 Mich. 299, 6 N. W. 664, 38 Am. Rep. 267; *Taylor v. Commonwealth,* 94 Ky. 281, 22 S. W. 217; *Commonwealth v. Stevenson,* 127 Mass. 446; *Pearce v. The State,* 115 Ala. 115, 22 South. 502; *The People v. Dalton,* 2 Wheel. Cr. Cas. [N. Y.] 161; *Thomas v. The People,* 34 N. Y. 351; Hughes, Crim. Law & Proc. § 596; 19 Cyc. 401.)

Then, there were the representations that appellant had a large amount of property and was in good financial standing, whereas it is alleged that he was absolutely insolvent. Added to these was the representation, which was also negatived, that he had $500,000 at his command and under his control. These representations were not mere promises, nor can they be regarded as immaterial. (19 Cyc. 398.) That there may have been connected with them future promises or other matters of less consequence does not relieve the false pretenses of their criminal character. It has already been determined that "the mere fact that a false pretense of an existing or past fact is accompanied by a future promise will not relieve the defendant or take the case out of the operation of the statute." (*The State v. Gordon,* 56 Kan. 64, 67, 42 Pac. 346.) It is not necessary to a conviction that the false pretenses should be the sole inducement to the obtaining of the money or property; it is enough if they have a controlling influence, although some minor considerations may concur. It was said in *In re Snyder, Petitioner, &c.,* 17 Kan. 542:

"It is not necessary, to constitute the offense of obtaining goods by false pretenses, that the owner has been induced to part with his property solely and entirely by pretenses which are false; nor need the pretenses be the paramount cause of the delivery to the prisoner. It is sufficient if they are a part of the moving cause, and, without them, the defrauded party would not have parted with the property." (Syllabus.)

There is a contention that the information is bad for duplicity, because it charges that the pretenses were made for the purpose of obtaining both draft and money. It is said, too, that the draft was obtained in Crawford county, where the prosecution was had, while the money was obtained upon it in Labette county. Only one offense was charged, and it arose out of the single transaction of obtaining the draft for sixty dollars by false pretenses. The averment that he had collected the money on the draft did not state an additional offense, nor invalidate the information. (*The State v. Pryor,* 53 Kan. 657; 37 Pac. 169; *The State v. McDonald,* 59 Kan. 241, 52 Pac. 453; *The State v. Meade,* 56 Kan. 690, 44 Pac. 619.) Nor can there be a valid objection to the jurisdiction of the court. The false representations and pretenses were made in Crawford county, and the draft was mailed by Mattox to Briggs in the same county. It was received in Labette county, it is true, but the general rule is that the venue is in the county where the property is obtained by the false pretense. The draft was obtained from Mattox when he surrendered possession of it by placing it in the post-office, addressed to the appellant. The post-office department is deemed to be the agent of the appellant in the same way that a common carrier would have been his agent if the draft had been given to it for delivery to him. (*In re Stephenson,* 67 Kan. 556, 73 Pac. 62; *Commonwealth v. Wood,* 142 Mass. 459, 462, 8 N. E. 432; *Regina v. Thomas Simpson Jones,* 1 Den. C. C. [Eng.] 551; *Leech's Case,* Dears. C. C. [Eng.] 642; 1 McClain, Crim. Law, § 696.)

Appellant complains of the admission of the testimony of three witnesses to the effect that he had made the same representations to them he had to Mattox, and had conducted similar transactions in regard to loans on farms, but that he had not effected a loan. This testimony was doubtless admitted, and was admissible, for the purpose of showing knowledge of the

falsity of the representations and guilty intent in making them. Briggs had held himself out as one who had made loans to farmers and who was able to make such loans. Evidence of the transactions with others tended to prove his fraudulent scheme; that he knew his representations to Mattox were false; and that he had made them with the intent to defraud. A fair statement of the rule is found in section 438 of Underhill on Criminal Evidence, where it is said:

"Evidence of similar offenses, involving the making of other false representations, is admissible against the prisoner to show that he was aware of the falsity of the statements made by him in the present instance, and that, knowing them to be false, he made them with the intent to deceive. Evidence of similar false pretenses is particularly relevant when it appears that the fraudulent act for which the accused is on trial does not stand alone, but is a part of a scheme, not merely to defraud one individual, but to swindle the community at large." (See, also, *The State v. Myers,* 82 Mo. 558, 52 Am. Rep. 389; *The State v. Jackson,* 112 Mo. 585, 20 S. W. 674; *DuBois v. The People,* 200 Ill. 157, 65 N. E. 658, 93 Am. St. Rep. 183; *Commonwealth v. Lubinsky,* 182 Mass. 142, 64 N. E. 966; *State of Iowa v. Dexter,* 115 Iowa, 678, 87 N. W. 417; *State v. Southall,* 77 Minn. 296, 79 N. W. 1007; *People v. Peckens,* 153 N. Y. 576, 47 N. E. 883; *Crum et al. v. The State,* 148 Ind. 401, 47 N. E. 833; *Carnell v. State,* 85 Md. 1, 36 Atl. 117; *Farmer v. The State,* 100 Ga. 41, 28 S. E. 26; *Rafferty v. State,* 91 Tenn. 655, 16 S. W. 728; *Tarbox v. The State,* 38 Ohio St. 581; *People v. Henssler,* 48 Mich. 49, 11 N. W. 804; *Wood v. The United States,* 41 U. S. 342, 10 L. Ed. 987; *Regina v. Rhodes,* 68 L. J., n. s., [Q. B.] 83, 79 L. T. Rep., n. s., 360; *Reg. v. Ollis* [1900], 2 Q. B. 758, 83 L. T. Rep., n. s., 251; Hughes, Crim. Law & Proc. § 647; 19 Cyc. 443.)

Other objections are made to rulings on the admission of testimony, but there is nothing substantial in them. The requested instructions which the court refused were manifestly incomplete and incorrect, and the charge given by the court fairly presented the

issues in the case to the jury. There appears to be sufficient testimony to support the verdict, and, no error being found, the judgment is affirmed.

All the Justices concurring.